IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

FILED
SEP 3 0 2011
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

| | | |
|---|---|---|
| ANTI LOTHIAN BANKRUPTCY FRAUD COMMITTEE, et al., | § § § | |
| Appellants, | § § | |
| v. | § § | No. MO-10-CA-68-H |
| LOTHIAN OIL, INC., et al., | § § | |
| Appellees. | § § | |
| LOTHIAN CASSIDY, LLC, et al., | § § | |
| Appellants, | § § | |
| v. | § § | No. MO-10-CA-111-H |
| LOTHIAN OIL, INC., et al., | § § | |
| Appellees. | § | |

## MEMORANDUM OPINION AND ORDER

This is an appeal from a decision of the United States Bankruptcy Court. On April 26, 2010, Appellants filed a notice of appeal complaining of three Bankruptcy Court orders in the underlying bankruptcy proceeding. **In re Lothian Oil, Inc., et al.**, No. 07-70121, Doc 2433 (Bkrtcy. W.D. Tex.). Two of the appeals were dismissed for want of jurisdiction. The remaining appeal concerns a challenge to the Bankruptcy Court's enforcement of an injunction contained in the confirmed Plan of Liquidation. On July 28, 2010, Appellants filed another notice of appeal, appealing the Bankruptcy Court's denial of a motion to set aside two orders under Rule 9024, and two final contempt judgments issued against Appellants for

violation of the order enforcing the injunction contained in the Plan. Because of commonalities of parties and issues, the Court has consolidated the appeals.

## I. Factual Background

On June 27, 2008 the Bankruptcy Court entered an order confirming the Second Modified Amended Joint Plan of Liquidation of the Debtors (The Plan). (BNKR. Doc. 2433). The Plan contains the following provisions:

> **11.3. Injunction:** . . . all Persons who have been, are, or may be holders of Claims against or Equity Interests in the Debtors arising on or before the Effective Date shall be enjoined from taking any of the following actions against or affecting the Debtors, their Estates, and the Estate Property . . .: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind against the Debtors, their Estates, or the Estate Property.

> **6.9 Preservation of Rights of Action:** . . . the Reorganized Debtors shall retain and shall have the exclusive right to enforce any claims, rights and causes of action that the Debtors or the Estates may hold against any entity . . .; provided, however, that the Plan does not preclude the rights, if any, of Creditors or Interest Holders to seek authority from the Bankruptcy Court to bring claims of the Estates if not pursued by the Creditors' Committee, the Debtors or the Plan Administrator by forty-five (45) days prior to the expiration of the statute of limitations for such cause of action . . . .

> **6.10 Protection of Certain Parties in Interest: Exculpation of Debtors and Creditors Committee.** The Debtors and their Affiliates, the Creditors' Committee, and any of their respective members, officers, directors, employees, agents, advisors, or professionals shall not have or incur any liability to any holder of a Claim or Equity Interest, for any act, event, or omission from the Petition Date to the Effective Date in connection with or arising out of the Bankruptcy Cases, the confirmation of the Plan, the consummation of the Plan, the administration of the Plan or

-2-

> the assets and property to be distributed pursuant to the Plan
> and the Plan Documents, unless such person or entity's action
> is determined as (i) not undertaken in good faith; (ii) actual
> fraud; (iii) willful misconduct; or (iv) gross negligence . .
> .

(BNKR Doc. 2433 at 14-15, 19). Appellants did not appeal the Confirmation Order. On December 24, 2009, Israel Grossman and Lothian Cassidy LLC filed a lawsuit against Lothian Exploration & Development II, L.P. in Kings County, New York (The "LEAD II Lawsuit") (BNKR Doc. 2382, Ex. D). On January 4, 2010, Appellants filed a second lawsuit in Kings County, New York against various board members, officers, and representatives of the Debtors and other entities involved in the bankruptcy cases (the "Kings County Lawsuit") (BNKR Doc. 2382, Ex. E). The Kings County Lawsuit was removed to federal court in the Eastern District of New York, transferred to the Western District of Texas, and referred by this Court to the Bankruptcy Court.

Appellees filed a motion to enforce the Plan Injunction arguing that both of the New York lawsuits violated the Plan's injunction by (1) indirectly attempting to collect against Estate Property; (2) attempting to assert causes of action owned by the Estate (BNKR Doc. 2382 at 5). Grossman filed a "Motion to Compel Compliance with December 8, 2008 Settlement," arguing that a post-confirmation settlement allowed him to preserve an unconditional right to pursue claims against any third parties, notwithstanding the Plan Injunction (BNKR Doc. 2409). Grossman's motion was denied.

-3-

On April 15, 2010, the Bankruptcy Court issued an order finding that both lawsuits were in violation of the Plan Injunction, and enjoining Jessica Sokol, attorney for Appellants, Israel Grossman, Lothian Cassity LLC, and the Sokol Clients from continuing to prosecute the New York Lawsuits or commencing any causes of action against the defendants in those lawsuits (BNKR Doc. 2423). Appellants have appealed that order to this court.

On April 19, 2010, Appellants moved the Bankruptcy Court under Federal Rule of Bankruptcy Procedure 9024 to reconsider two orders it had previously entered (BNKR Doc. 2427). Appellants sought to set aside the Court's April 22, 2009 Order Granting the Reorganized Debtors' Motion to Approve Compromise and Settlement of Claims By and Among Reorganized Debtors, North Fork Bank (now Capital One, N.A.) and Bruce Ransom (Northfork Settlement Order). They also sought to set aside the Bankruptcy Court's April 8, 2010 order denying Grossman's motion to compel compliance with the 2008 settlement agreement. The Bankruptcy Court denied the motion as to both orders on the grounds that they had been untimely filed and that there was no showing of mistake, inadvertence, or fraud (BNKR Doc. 2487 at 46-48). Appellants have appealed this denial.

While all of this was going on, Appellants continued to prosecute the New York cases in violation of the Bankruptcy Court's preliminary injunction entered January, 2010 and its final orders, entered February and April, 2010 finding that the lawsuits violated

-4-

the Plan Injunction. Because of the continued violation of the its orders, the Bankruptcy Court issued a show cause order, requiring Sokol, Grossman, and various Appellants to appear in person to show why they should not be held in contempt (BNKR Doc. 2447). Only one of the appellants appeared at the hearing - Grossman - and he appeared only by telephone. On July 15, 2010, the Bankruptcy Court entered Findings of Fact and Conclusions of Law and two Final Contempt Judgments against Appellants and their attorney, Sokol, for repeated violations of the Bankruptcy Court's orders (BNKR Doc. 2490, 2491). Appellants appeal these orders.

## II. Standard of Review

A district court reviews the bankruptcy court's findings of fact under the clearly erroneous standard and its conclusions of law *de novo*. **In re Morrison**, 555 F.3d 473, 480 (5th Cir. 2009). Under the clear error standard, the Court will only reverse if, considering all of the evidence, it has a "definite and firm conviction that a mistake has been made." **Id.** Where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous. **Anderson v. Bessener City**, 470 U.S. 564, 574 (1985). Both a bankruptcy court's denial of a Rule 9024 motion and an order imposing contempt sanctions are reviewed for abuse of discretion. **In re Pettle**, 410 F.3d 189, 191 (5th Cir. 2005); **In re Bradley**, 588 F.3d 254, 261 (5th Cir. 2009).

### III. The Order Enforcing the Plan Injunction

Appellants first complain that the Bankruptcy Court erred in granting the Reorganized Debtor's motion to enforce the Plan Injunction, enjoining Appellants from prosecuting the New York cases (BNKR Doc. 2423). They argue that (1) the Bankruptcy Court lacked jurisdiction to enforce the Plan Injunctions; (2) a reorganization plan that includes third-party non-debtor releases is prohibited in the Fifth Circuit; (3) the New York lawsuits did not violate the language of the Plan Injunction; and (4) the Court's order violated a settlement agreement between Appellants and Debtors that gave Appellants the right to sue any third party. Having considered the briefs and the record, the Court finds that the Bankruptcy Court's Order Enforcing the Plan Injunction should be reversed in part and affirmed in part.

**a. Bankruptcy Court Jurisdiction**

Appellants first argue that the Bankruptcy Court did not have jurisdiction to enter the order enforcing the plan injunction. This argument is completely without merit. While it is true that the Bankruptcy Court does not have jurisdiction over every unpleasantness that occurs to Appellees, it certainly does have jurisdiction to enforce its own orders and over matters pertaining to the implementation of the liquidation plan. **Travelers Indem. Co. v. Bailey**, 129 S.Ct. 2195, 2205 (2009). This was a matter specifically concerning the interpretation and implementation of

the Confirmed Plan and, as such, plainly fell within the Bankruptcy Court's jurisdiction.

### b. Validity of the Plan Release and Injunction

Appellants next challenge the Bankruptcy Court's ruling enforcing the confirmed plan by arguing that the Plan contains impermissible third-party releases. In doing so, Appellants attempt a collateral attack on the Confirmation Order. The Bankruptcy Court entered the Confirmation Order on June 27, 2008. Appellants were free to appeal to this Court when the Confirmation Order was issued and they did not. They now, nearly two years after the Bankruptcy Court issued the Confirmation order, seek to revive their opportunity to appeal by resisting the Bankruptcy Court's enforcement of the Order. This collateral attack on a two-year-old order is barred by the doctrine of *res judicata* and the Court will not entertain it. **Republic Supply Co. v. Shoaf**, 815 F.2d 1046, 1050-51 (5th Cir. 1987).

### c. Application of the Plan Release and Injunction

Appellants argue that, even if the Plan's release and injunction are enforceable, the New York Lawsuits fall outside of their scope because the Plan did not release or enjoin claims against third-party non-debtors. The Court will consider each of the lawsuits in turn.

Confirmation of the plan vested the exclusive right to bring any derivative litigation claims in the Reorganized Debtors (BNKR

Doc. 2433 at 14-15). The Plan Injunction enjoined "all Persons who have been, are, or may be holders of Claims against or Equity Interests in the Debtors" from bringing any action against or affecting the Debtors, their Estates or the Estate Property (BNKR Doc. 2433 at 19). Derivative claims or causes of action are classified as Estate Property and are vested in the Reorganized Debtors (BNKR Doc. 2433 at 20).

The Court will first consider whether Kings County Lawsuit violated the Plan Injunction, a task made needlessly difficult by the fact that the complaint is a bloated 87 pages long and nearly indecipherable (See BNKR Doc. 2382 Ex. E). The complaint consists primarily of sweeping accusations of conspiracy, manipulation and blackmail. The plaintiffs fail to identify their claims clearly or to specify which defendants are subject to which claim. Included among the defendants are former officers, directors and agents of Lothian Oil, Inc., as well as their lead counsel and the plan administrator.

The Court has undertaken the painstaking task of reviewing the complaint in its entirety. It appears to consist entirely of allegations that are derivative of an alleged injury to the Debtor. The plaintiffs accuse various defendants of converting, fraudulently transferring, misappropriating, and generally committing unspeakable atrocities upon the assets of Lothian Oil, Inc. (See BNKR Doc. 2382 ex. E, Para. 123, 125, 152, 153, 198, 223,

09/30/2011 16:20   5129216831   JUDGE HUDSPETH   PAGE 01/11

224, 243, 244). Some plaintiffs, who were also Lothian shareholders, accuse Lothian Oil's officers of breach of fiduciary duty for fraudulently conveying Lothian Oil, Inc. assets and "falsely or gross negligently wantonly and with conscious and voluntary disregard of the need to use reasonable care" assuring those plaintiffs that a put option would be fully funded (BNKR Doc. 2382 Ex. E at Para. 207, 219). There are also accusations of professional misconduct on the part of Lothian Oil's attorneys and the plan administrator during the bankruptcy proceedings (BNKR Doc. 2382 Ex. E at Para. 116-19, 149, 236-39, 266).

All of these claims fall squarely within the scope of the plan injunction. Furthermore, Appellants' contention that third-party non-debtor claims were not released in the Confirmed Plan is completely irrelevant to the analysis. The claims in the Kings County suit not only "affect" Estate Property, they are Estate Property. The Kings County plaintiffs attempt to assert causes of action on behalf of Lothian Oil Inc., a clear violation of the Plan Injunction. Section 11.2 vests title to all estate Property, including all rights of action, in the Reorganized Debtors. Section 11.4 unambiguously vests in the Reorganized Debtors the exclusive right to bring any causes of action derivative of the Estate or the Debtors. Section 6.9 prohibits any party other than the Reorganized Debtors from bringing derivative actions unless the Reorganized Debtors fail to pursue the claims and the interest holders seek

authority from the Bankruptcy Court. Appellants have not even attempted to comply with the procedure outlined in the Confirmed Plan that would allow them to bring these claims. The Bankruptcy Court's order enforcing the plan injunction as to the Kings County Lawsuit, therefore, should be affirmed.

The Court now turns to the suit in New York County against LEAD II. In it, Lothian Cassidy LLC and Israel Grossman allege, among other things, that LEAD II defaulted on a $500,000 promissory note to Lothian Cassidy LLC (BNKR Doc. 2382 Ex. D at Para. 1-2). The LEAD II plaintiffs seek a constructive trust against properties that were disposed of in the bankruptcy proceeding and monetary damages against LEAD II (BNKR Doc. 2382 Ex. D at Para. 92-96). All parties agree that LEAD II is a third-party non-debtor. The Bankruptcy Court held that the LEAD II plaintiffs were enjoined from prosecuting this suit because it affected Estate Property (BNKR Doc. 2423). The Confirmed Plan defines "Estate Property" as "all right, title, and interest in and to any and all property of every kind of nature owned by the Debtors or their Estates on the Effective Date" (BNKR Doc. 2382 Ex. C.) The "Effective Date" is defined as "a date which shall be on or before the tenth (10th) day after the Confirmation Order becomes a Final order" (BNKR Doc. 2382 Ex. C). Appellees do not contend that the Debtors or Estates held any right to the properties against which the LEAD II plaintiffs seek a constructive trust. Neither Appellees' brief nor the Record

contains any support for the conclusion that the Confirmed Plan enjoined litigation against third-party non-debtors that do not involve Estate Property. The Court, in its own reading of the Plan, finds no indication of even an attempt to enjoin actions against third-party non-debtors that do not affect the Estates or Estate Property. Because the Bankruptcy Court's injunction against prosecuting the LEAD II Lawsuit was based on the clearly erroneous finding that the suit affected Estate Property, the Court finds that it must be reversed.

### d. The Settlement Agreement

Finally, Appellants argue that the December, 2008 Settlement Agreement gave them the unabridged right to prosecute any lawsuit against any third party regarding any aspect of the bankruptcy proceeding. The Settlement Agreement, which was approved by the Bankruptcy Court after confirmation of the Plan, gives Appellants the right to pursue the contract claims settled in the agreement against any third party (BNKR Doc. 1799, Ex. A at 2). It does not completely exempt Appellants from the provisions of the confirmed plan or grant them the right to bring derivative actions belonging to the Reorganized Debtors.

### IV. Denial of the Rule 9024 Motion

Appellants next challenge the Bankruptcy Court's denial of its April 9, 2010 Rule 9024 (which incorporates Federal Rule 60(b)(3)) motion seeking reconsideration of two of the Bankruptcy Court's

past orders (BNKR Doc. 2427). In that motion, Appellants sought to set aside the Bankruptcy Court's April 22, 2009 Order Granting Reorganized Debtors' Motion to Approve Compromise and Settlement of Claims By and Among Reorganized Debtors, North Fork Bank and Bruce Ransom. Appellants never appealed the original order. They also sought to set aside an April 8, 2010 order denying Israel Grossman's motion to compel compliance with a December 2008 settlement. Appellants attempted an untimely appeal of that order in this case. The Bankruptcy Court denied Appellants' 9024 motion on the grounds that it was untimely - Appellants waited nearly a year to file the motion - and on the merits, finding that there was no mistake, inadvertence, fraud, or other cause to set aside the orders (BNKR Doc. 2487 at 46-47).

To prevail on a Rule 60(b)(3) motion, a party must establish by clear and convincing evidence that (1) the adverse party engaged in fraud or other misconduct; and (2) the misconduct prevented the moving party from fully and fairly presenting his case. **Hesling v. CSX Transp., Inc.**, 396 F.3d 632, 641 (5th Cir. 2005). A district court will only reverse a bankruptcy court's denial of a Rule 60(b)(3) motion if it finds that it was so unwarranted as to constitute an abuse of discretion. **In re Pettle**, 410 F.3d at 191. Appellants do not argue that the Bankruptcy Court abused its discretion in denying their Rule 60(b)(3) motion, nor do they even address the standards governing Rule 60(b)(3) motions. Instead,

-12-

they focus on the merits of the April 22, 2009 order and completely ignore the April 8, 2010 order. A review of the record reveals that Appellants presented the Bankruptcy Court with *no evidence whatsoever* of any misconduct or misrepresentation in connection with either order (BNKR Doc. 2487 at 1-47). The Court, therefore, cannot find that the Bankruptcy Court's denial was an abuse of discretion.

### V. Contempt Sanctions

In the final contempt judgments, the Bankruptcy Court imposed five sanctions: (1) a $500,000 judgment against Sokol and Grossman, jointly and severally, in favor of the Debtors; (2) a $100,000 judgment against Sokol and Grossman, jointly and severally, in favor of the Belridge Group; (3) a bar against recovery of any sum from the Debtors' estate by any Appellant until all other claimants receive actual distributions of $1,000,000; (4) a $10,000 sanction payable to the Bankruptcy Court for each additional action or pleading in the LEAD II Lawsuit; and (5) a $10,000 sanction payable to the Bankruptcy Court for each additional action or pleading in the Kings County Lawsuit. Appellants challenge the contempt judgments, arguing (1) the sanctions were for criminal, rather than civil, contempt and were beyond the scope of the Bankruptcy Court's authority; and (2) the contempt judgments permit impermissible fee-shifting. They also argue that Judge King should have been disqualified and challenge the bankruptcy court's denial of a

motion to exercise mandatory abstention, but those issues are not properly before the Court and will not be addressed.

**a. Nature of the Contempt Sanctions**

Characterization of a contempt order as civil or criminal depends primarily on its purpose. Civil contempt orders serve two purposes: (1) to coerce compliance with a court order; and (2) to compensate another party for a contemnor's violation. **Quilling v. Funding Resource Group**, 227 F.3d 231, 234 (5th Cir. 2000). In determining the nature of a contempt sanction, a reviewing court must examine the character of the relief itself, rather than relying on the stated purpose of the contempt sanction. **Id.** The primary purpose of a criminal contempt sanction, on the other hand, is to punish the contemnor and to vindicate the authority of the court. **In re Bradley**, 588 F.3d 254, 263 (5th Cir. 2009). Contempt sanctions that are conditioned upon future conduct of the contemnor are civil in nature. **Lamar Financial Corp. v. Adams**, 918 F.2d 564, 566 (5th Cir. 1990). Backward-looking contempt sanctions are civil when their purpose is to remedy, rather than punish, the offending conduct. **In re Bradley**, 588 F.3d at 264. Remedial civil contempt sanctions are payable to the injured party, rather than to the court. **Id.**

The Bankruptcy Court's order that further action in the New York Lawsuits would result in a $10,000 fine for each violation was a finding of civil contempt because the sanction was conditioned

upon future action of the contemnors and was clearly intended to deter future contempt. **Lamar Financial Corp.**, 918 F.2d at 566.

The Court now turns to the nature of the $500,000 judgment against Grossman and Sokol in favor of the Debtors, the $100,000 judgment against Grossman and Sokol in favor of the Belridge group, and the $1,000,000 recovery bar against the appellants in the New York Lawsuits. Appellants do not challenge the amount of the award. Instead, they argue that these sanctions were also criminal rather than civil. As evidence of punitive intent, Appellants argue that the Debtors carried insurance coverage that would cover the expenses incurred because of their offending behavior. In support of this position, they cite cases in which backward-looking contempt sanctions payable to the court registry were held to be criminal rather than civil. **Lamar Financial Corp.**, 918 F.2d at 566. The Court finds Appellants' argument unpersuasive. First, there is no evidence that the debtors carried continuing D&O coverage. Second, and more importantly, the Court can find no reason, and Appellants have provided none, that the existence of an insurance policy would have any bearing on the nature of the contempt award. Having reviewed the record, the Court finds that the contempt sanctions issued in this case were civil in nature. While it is certainly not dispositive, the Court notes that the Bankruptcy Court determined that the contempt judgments were civil (BNKR Doc. 2491 at Para. 51). After holding an evidentiary hearing, the Court

determined that the Debtors had incurred more than $500,000, and the Belridge Group more than $100,000, in reasonable attorneys' fees as a result of Appellants contempt (BNKR Doc. 2491 at Para. 34; BNKR Doc. 2493 at Para. 34). Appellants do not contest this finding. The judgment was entered to "partially reimburse" the Reorganized Debtors for the expenses of Appellant's contemptuous actions (BNKR Doc. 2491 at Para. 52). Most importantly, the sanction was payable to the injured parties - the Reorganized Debtors - rather than to the court. Likewise, the recovery bar compensates injured parties - claimants in the bankruptcy whose recovery has been diminished by the contemptuous actions of appellants - and is civil in nature.

**b. Fee Shifting**

Appellants next argue that the American Rule against fee shifting prohibits a court from awarding attorney's fees as remedial civil contempt sanctions without a finding of bad faith or willful violation. The American Rule prohibits courts from awarding attorney's fees to a prevailing litigant unless certain conditions are met. It does not, however, prohibit courts from awarding remedial contempt sanctions in the form of attorney's fees, even without a finding of bad faith. **Cook v. Ochsner Foun. Hosp.**, 559 F.2d 270, 272 (5th Cir. 1977)(holding that the American Rule does not prohibit courts from awarding attorney's fees as civil sanctions regardless of whether there was a willful violation);

*Chao v. Transocean Offshore, Inc.*, 276 F.3d 725, 728 (5th Cir. 2002)(affirming an award of attorneys fees as contempt sanctions and holding that good faith is not a defense to civil contempt).

### c. The LEAD II Lawsuit

While none of Appellants' arguments challenging the contempt judgments and awards are unpersuasive, the Court finds that the contempt judgments should be reversed as to the LEAD II Lawsuit. The Bankruptcy Court's finding that the LEAD II Lawsuit violated the Plan Injunction was erroneous and so any contempt judgment against appellants for prosecuting the LEAD II Lawsuit must be reversed. Because the Bankruptcy Court's holding Appellants in civil contempt as well as its calculation of the sanction amount was based in part on the erroneous finding that the LEAD II Lawsuit violated the Plan Injunction, the contempt judgments must be reversed.

### VI. Conclusion

This Court concludes that the Bankruptcy Court's injunction against the prosecution of the LEAD II Lawsuit was based on a clearly erroneous finding of fact and should be reversed. As a consequence, its imposition of civil contempt sanctions for continual prosecution of the LEAD II Lawsuit was an abuse of discretion and should also be reversed. This Court affirms the Bankruptcy Court's finding that the Kings County Lawsuit violated the Plan Injunction and its denial of Appellant's Rule 9024 Motion.

It is therefore ORDERED that the Bankruptcy Court's injunction against prosecuting the Kings County Lawsuit in its April 15, 2010 order enforcing the plan injunction be, and it is hereby, AFFIRMED.

It is further ORDERED that the Bankruptcy Court's injunction against prosecuting the LEAD II Lawsuit in its April 15, 2010 order enforcing the plan injunction be, and it is hereby, REVERSED.

It is further ORDERED that the Bankruptcy Court's July 7, 2010 oral order denying Appellants' Rule 9024 Motion be, and it is hereby, AFFIRMED.

It is further ORDERED that the final contempt judgments entered July 15, 2010 be, and they are hereby, REVERSED.

It is further ORDERED that this cause be, and it is hereby, REMANDED to the United States Bankruptcy Court for further proceedings not inconsistent with this opinion.

SIGNED AND ENTERED THIS 30th day of September, 2011.

_/s/ Harry Lee Hudspeth_
HARRY LEE HUDSPETH
SENIOR UNITED STATES DISTRICT JUDGE